Vikram Subramanian (State Bar No. 261270)
**CHUGH, LLP**
1600 Duane Avenue
Santa Clara, CA 95054
Tel: (408) 970-0100
Fax: (408) 970-0200
Email: vikram.subramanian@chugh.com

Attorneys for Plaintiff
BIOGENEX LABORATORIES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOGENEX LABORATORIES, <br><br> Plaintiff, <br><br> v. <br><br> INTERSCIENCE DIAGNOSTIC LABS, and DOES 1 through 100, inclusive <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiff, BIOGENEX LABORATORIES (hereinafter "Plaintiff" or "Biogenex"), alleges as follows:

## INTRODUCTION

1.  This is an action for breach of contract, conversion, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, open book account, unfair trade practices, and conversion.  Plaintiff is a California company, with its principal place of business located at

- 1 -

1  48810 Kato Road, Suites 100E & 200E, Fremont, California 94538, and is in the business of

2  providing customer-centric molecular pathology solutions in the marketplace.

3  2.  Upon information and belief, Defendant INTERSCIENCE DIAGNOSTIC LABS

4  (hereinafter "Interscience") is a New York company, with its principal place of business located at

5  1750 Richmond Avenue, Staten Island, New York 10314, and is in the business of providing

6  anatomic pathology services.

7  3.  Plaintiff is not informed of the true names and capacities of any of the defendants

8  sued herein fictitiously as Does 1 through 100, inclusive (together with Interscience, the

9  "Defendants").  As and when Plaintiff ascertains the true identities and capacities of any of the DOE

10  defendants, Plaintiff will seek leave of this Court to amend the Complaint to allege the DOE

11  Defendants' true names and capacities.

12  4.  Plaintiff alleges, that, at all times mentioned herein, all of the acts were done by the

13  Defendants, and that Plaintiff's damages as herein alleged were proximately caused by Defendants'

14  conduct.

15  **JURISDICTION AND VENUE**

16  5.  This court has jurisdiction over this matter and over defendants pursuant to the

17  System Rental and Reagent Supply Agreement ("**Agreement**") entered into by both parties, more

18  specifically under Section 6 of Appendix 3 of the Agreement.  A true and correct copy of the

19  Agreement is attached hereto as Exhibit "A".  As a result, this Court would have supplemental

20  jurisdiction of all of Plaintiff's state law claims lodged in this matter.  In addition, Plaintiff's

21  claims in controversy are in excess of $75,000, and there is diversity of citizenship between the

22  parties.  See 28 U.S. Code §1332(a)(1).

23  **FACTS COMMON TO ALL COUNTS**

24  6.  Defendant sought and availed of Plaintiff's services and equipment by entering into the

25  Agreement on or about February 21, 2019 - for a noncancellable term of 60 months until February

26  20, 2024 - which outlines the right and duties of both parties.  As per the Agreement, Defendant took

27  possession of equipment belonging to Plaintiff (the "Equipment"), which includes: one (1) EZ

28

Chugh, LLP
1600 Duane Avenue
Santa Clara, CA 95054

COMPLAINT

1  Retriever System; and one (1) i6000 Diagnostic.  As per the Agreement, said Equipment was leased

2  out to Defendant for $6,000 per month.

3       7.      In addition, Plaintiff would also invoice Defendant for the purchase of slides,

4  pursuant to the Cost Per Slide analysis provided in the Agreement.  However, Defendant has failed

5  to remit payment to Plaintiff for multiple prior invoices in early 2020, leaving a current outstanding

6  balance of $15,379.76.  Attached hereto as Exhibit "B" are true and correct copies of said outstanding

7  invoices (hereinafter the "Invoices").

8       8.      Per the Agreement, Plaintiff was to invoice Defendant monthly for use of the

9  Equipment and purchase of slides, and Defendant agreed to pay Plaintiff within thirty (30) days of

10  receipt of invoice.

11       9.   Plaintiff has consistently invoiced Defendant.  However, not all the invoices were paid,

12  on time or otherwise, as agreed to by the Defendant.  On good-faith, however, Plaintiff continued

13  rendering services for Defendant, despite not receiving payments on a regular basis.

14       10. As of September of 2020, Defendant still owes Plaintiff for the Invoice and Equipment.

15  Notwithstanding repeated requests from Plaintiff, Defendant has not performed their payment

16  obligations as set forth in the Agreement.  In addition, Defendant is still liable for the 47 remaining

17  monthly lease payments of $6,000.00 for the Equipment until February 20, 2024, or for a total of

18  $282,000.00.  Attached hereto as Exhibit "C" is the Equipment Invoice ("Equipment Invoice").

19       11.     The total value of said Equipment, is $61,599.20.  Attached hereto as Exhibit "D" is

20  the Equipment Value ("Equipment Value").

21       12.     In addition, on or about September 13, 2013, the parties had also entered into an

22  agreement ("Second Agreement") for a second i6000 Diagnostics ("Second i6000").  Attached

23  hereto as Exhibit "E" is a true and correct copy of the Second Agreement.

24       13.     The Second Agreement required 60 monthly lease payments of $2,750 and is "non-

25  cancelable".  Id., p. 1.  It also stipulated that any litigation would have jurisdiction in the Northern

26  District of California as well.  Id., p. 4.  There now exists an outstanding $22,000 invoice for the

27  Second Agreement, owed by Defendant.  Attached hereto as Exhibit "F" is a true and correct copy

28  of this Second Invoice.

**Chugh, LLP**
1600 Duane Avenue
Santa Clara, CA 95054

- 3 -

14.     Defendant was fully aware of the payment obligations that were required of it by the Agreement and Second Agreement (collectively, the "Agreements"), but refused to honor the same.

15.     The failure of Defendant to remit payment has resulted in a breach of the Agreements. This caused immense loss to Plaintiff, both financial and good will, in an amount to be proved at trial and added to the damages amount stated above.

16. Plaintiff has no further obligation to perform under the Agreements, and has fulfilled all the conditions, except those, which were excused, waived, or whose performance was prohibited by or intentionally interfered with by the Defendant.  Further, Defendant accepted Plaintiff's services, Invoices, and Equipment, and did not dispute any of the foregoing.

17.     Defendant is liable to pay interest on the unpaid Invoices up to the date the Invoices are finally paid in an amount to be proved at trial.

18.     Defendant is liable to pay all attorneys' fees and costs incurred in relation to Defendant's breach of the Agreement as per Appendix 3, Section A of the Agreement, in an amount to be determined at trial.

## COUNT I

### Breach of Contract

19. Plaintiff repeats and re-alleges Paragraphs 1 through 18, inclusive, and incorporates the same herein by reference as though set forth in full.

20. As detailed above, Plaintiff entered into the Agreements with Defendant.  Plaintiff regularly sent invoices for Defendant's purchase of slides and for use of the Equipment, which were to be paid by Defendant within thirty (30) days of receipt of the invoice.

21. The Agreements constitute binding and enforceable written agreements.

22.     Defendant breached the Agreements by failing to make payments pursuant to the Invoices and for the Equipment, despite repeated demand by Plaintiff.

23.     Plaintiff has complied and fulfilled all its obligations under the Agreements, except those which may have been excused or prevented from performance by Defendant.

24.     As a proximate cause of Defendant's breach of the Agreements, Plaintiff has been damaged in an amount to be proved at trial, but in no case less than: (1) $15,379.76 for the Invoices

Chugh, LLP
1600 Duane Avenue
Santa Clara, CA 95054

- 4 -

for the slides; (2) $6,000 monthly lease payments for the Equipment until February 20, 2024, or a total of $282,000.00 for the Equipment Invoice; (3) $61,599.20, which is the current Equipment Value; and (4) $22,000 for the Second Agreement for the Second i6000.

## COUNT II

### Breach of Implied Covenant of Good Faith and Fair Dealing

25. Plaintiff repeats and re-alleges Paragraphs 1 through 24, inclusive, and incorporates the same herein by reference as though set forth in full.

26. A covenant of good faith and fair dealing is implied on the part of all parties to any agreement requiring that neither party engages in conduct, which would deprive the other of the benefit of their bargain or cause any damages to one party due to such conduct on the part of the other party.

27. The implied covenant of good faith and fair dealing imposed on the Defendant a duty to do everything that the Agreement presupposed that they would do to accomplish the contractual purposes. By omitting to take the necessary actions and abstaining from taking certain actions, Defendant breached the implied covenant of good faith and fair dealing. Defendant's performance required under the Agreement was not done in good faith and honesty in the conduct and transaction concerned under the facts given above.

28. Defendant has breached the implied covenant of good faith and fair dealing by failing to comply with the terms of the Agreements by not paying Invoices on time for the slides, and for the Equipment.  This has caused damage to Plaintiff in an amount to be proved at trial.

29. Defendant is in receipt of the Invoices, but failed to pay for them, thereby committing breach of implied covenant of good faith and fair dealing.

30. Plaintiff has complied and fulfilled all its obligations and all conditions of the Agreements except those which are excused or prevented from performance by the Defendant.

31. As a proximate cause of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proved at trial.

## COUNT III

### Negligent Misrepresentation

- 5 -

COMPLAINT

**Chugh, LLP**
1600 Duane Avenue
Santa Clara, CA 95054

32. Plaintiff repeats and realleges paragraphs 1 through 31 inclusive and incorporates the same herein as though set forth in full.

33. A claim for negligent misrepresentation requires the Plaintiff to prove each of the following: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *California Public Employees' Retirement System v. Moody's Investors Service, Inc.,* 226 Cal. App. 4th 643, 172 Cal. Rptr. 3d 238 (1st Dist. 2014), review denied, (Sept. 10, 2014).

34. As in negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or otherwise, owed by a Respondent to the injured person. *Bock v. Hansen*, 225 Cal. App. 4th 215, 170 Cal. Rptr. 3d 293 (1st Dist. 2014), review denied, (July 16, 2014).

35. Herein, the Defendant made representations of material fact. The Defendant, by the express words of the Agreements agreed to pay the Plaintiff for the Equipment, slides, and certain services of the latter, without any intention of performing it. Despite the explicit language of the Agreements, the Defendant has intentionally not made payments for the services rendered. The Defendant never intended to pay the Plaintiff for all the services rendered.

36. As a direct result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT IV

### Open Book Account

37. Plaintiff repeats and realleges paragraphs 1 through 36 inclusive and incorporates the same herein as though set forth in full.

38. Since the inception of the Agreements, the Defendant accepted Plaintiff's Invoices and the Equipment. No discrepancy notice was ever received from Defendant relating to the Agreements, Invoices, or Equipment.

39. The Defendant made certain payments towards initial invoices sent by Plaintiff. As of today's date, however, the remaining Invoices remain outstanding.

Chugh, LLP
1600 Duane Avenue
Santa Clara, CA 95054

COMPLAINT

Chugh, LLP
1600 Duane Avenue
Santa Clara, CA 95054

40. Plaintiff has maintained a detailed statement of transactions between itself and the Defendant that constitutes the principal record of their dealings in respect to the Agreements.

41.     Defendant now stands indebted to Plaintiff, and Plaintiff has made numerous demands on the Defendant for payment, which is now due and owing to Plaintiff, on an open book account but Defendant has failed to pay, and refuses to pay.

42.     As a direct result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial, but in no case less than: (1) $15,379.76 for the Invoices for the slides; (2) $6,000 monthly lease payments for the Equipment until February 20, 2024, or a total of $282,000.00 for the Equipment Invoice; (3) $61,599.20, which is the current Equipment Value; and (4) $22,000 for the Second Agreement for the Second i6000.

## COUNT V

### Violation of Unfair Trade Practices

43. Plaintiff repeats and realleges paragraphs 1 through 42 inclusive and incorporates the same herein as though set forth in full.

44. The second "wrong" proscribed by § 17200 is "unfair" business practices. Because §17200's definition of the five proscribed "wrongs" is set forth in the disjunctive, a business practice can be "unfair"—and violative of § 17200—even if it is not "deceptive" and even if it is "lawful." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 C4th 163, 180, 83 CR2d 548, 560-561.

45. The statutory language referring to 'any unlawful, unfair or fraudulent' practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. 'Because Business & Professions Code § 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.'" *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, supra, 20 C4th at 180, 83 CR2d at 560-561.

46. By intentionally engaging in the non-payment of monies, the Defendant has not only defaulted on the Agreements but also engaged in unfair business practices.

- 7 -

47.     As a direct result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

### COUNT VI

### Conversion

48. Plaintiff repeats and realleges paragraphs 1 through 47 inclusive and incorporates the same herein as though set forth in full.

49.     As described earlier, as part of the Agreements, Plaintiff leased the certain Equipment and the Second i6000 to Defendant for a sum certain of $6,000 per month, and for $2,750 per month, each for a term of 5 years.

50.     However, since April of 2020, Defendant has failed to remit payments to Plaintiff for the lease of the Equipment and Second i6000.  Furthermore, the Defendant is still unlawfully in possession of the Equipment and Second i6000, and has not returned them to Plaintiff despite defaulting on making the lease payments required for the same.

51.     Defendant has not returned said Equipment and Plaintiff has thus been harmed as a result, at least in the amount of $65,598.40, which is the value of said Equipment.  There is also an outstanding $22,000 invoice for the Second Agreement, owed by Defendant.

52.     As a direct result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial, but in no case less than: (1) $15,379.76 for the Invoices for the slides; (2) $6,000 monthly lease payments for the Equipment until February 20, 2024, or a total of $282,000.00 for the Equipment Invoice; (3) $61,599.20, which is the current Equipment Value; and (4) $22,000 for the Second Agreement for the Second i6000.

.

### PRAYER FOR RELIEF

**WHEREFORE, Plaintiff** prays for judgment against Defendant as follows:

### On All Causes of Action:

1.     For general and consequential damages in an amount to be proved during the course of these proceedings;

COMPLAINT

Chugh, LLP
1600 Duane Avenue
Santa Clara, CA 95054

2.      For reasonable attorney's fees and costs, including the costs of expert witnesses and costs of collection.

3.      For exemplary and punitive damages in an amount to be proved at trial;

4.      For compensatory damages to be proved during the course of these proceedings;

5.      For lost profits to be proved during the course of these proceedings;

6.      For pre-judgment interest on the damages from the date of issue of each invoice;

7.      For special damages in an amount to be proved at trial;

8.      For such other relief as may deem just, fair, and proper.

RESPECTFULLY SUBMITTED

Chugh, LLP

Dated: January 29, 2021

By: _/s/_____
       Vikram Subramanian
       Attorney for Plaintiff
       Biogenex Laboratories

**Chugh, LLP**
1600 Duane Avenue
Santa Clara, CA 95054

COMPLAINT

# EXHIBIT A



**Accelerating the pace of precision medicine**

*System Rental And Reagent Supply Agreement(Monthly)*

| CUID #: | ITS002 | Contract ID: | ITS002-2019-2-SRRA |
|---|---|---|---|
| Prepared By: | Hosna Mujadidi | Contract Date: | 2/21/2019 |
| Account Rep: | Hosna Mujadidi | | |
| Account Rep Tel: | (416) 219-2035 | | |
| Account Rep Email: | h.mujadidi@biogenex.com | | |

**Customer Information (Ship To Address)** | **Billing Information (Bill To Address, if different)**

| Institution Name: | InterScience Diagnostic Labs | Legal Name: | InterScience Diagnostic Labs |
|---|---|---|---|
| Attention: | Ms. Sarah Malik | Attention: | Ms. Sarah |
| Address: | 1750 Richmond Avenue | Address: | 1750 Richmond Avenue |
| Address: | | Address: | |
| City: | Staten Island | City: | Staten Island |
| State: | NY | State: | NY |
| Zip Code: | 10314 | Zip Code: | 10314 |
| Tel. No. | 718 698 5461 | Tel. No. | 718 698 5461 |
| FAX. No. | 718 698 4517 | FAX No.: | 718 698 4517 |
| E-Mail: | ski214@aol.com | E-Mail: | ski214@aol.com |

**Instruments Included in the Contract**

| CATALOG NUMBER | SERIAL NUMBER | QTY | DESCRIPTION | Rental Fee (60 Months) | SERVICE FEE |
|---|---|---|---|---|---|
| MW014-MO | MO1081 | 1 | EZ Retriever™ System, 110v | Legacy | $ - |
| AS6030 | AS61029 | 1 | i6000™ Diagnostic | Legacy | $ - |
| | | | | | |
| | | | | | |
| | | | Rental Fees* (per month) | $ - | |
| | | | Service Contract Fees (per month) | $ - | |
| | | | Reagent Commitment (per month) | $ 6,000.00 | |
| | | | TOTAL MONTHLY PAYMENT | $ 6,000.00 | |

**Summary of Basic Terms**

| Monthly Minimum: | $6,000 | Deposit: | None |
|---|---|---|---|
| Term: | 60 Month(s) | Contract Start Date: | 2/21/2019 |
| Cancellation: | This Agreement is noncancellable. | Contract End Date: | 2/20/2024 |
| Rental Fee*: | Customer agrees to rent the system(s) at the Total Monthly Payment stated above, depending on the term chosen. A portion of the Rental Fee* will be credited towards a Reagent Commitment (see below). | | |
| Reagent Commitment: | Reagent Commitment* will be paid each month and Customer can place reagent orders against accumulated balance. If purchases exceed the accumulated balance customer will pay any remaining balance under their normal credit terms. | | |
| Service Contract Fees: | Service Agreement is mandatory and will be included in the monthly commitment | | |
| Reagent Discounts: | Discounts for Reagents are listed in Appendix 1. | | |
| Initial Payment: | Customer will be invoiced for the first and last Rental Fees upon delivery of the System(s). | | |
| Delivery: | Shipped FOB Seller's dock; Insurance & Freight prepaid and will be added to the invoice. | | |
| Installation & Training: | Installation and Training will be provided by BioGenex at Customer's site at no cost to the Customer. | | |
| Service Maintenance, Support: | Full Service Maintenance covers Repairs and Preventive Maintenance of system and computer hardware, as well as software upgrades. Service Plan covers parts, labor, and service travel (Refer to Appendix 2). | | |
| Purchase or Renewal Option: | At the End Date of this Agreement, Customer may purchase title to the System by paying to BioGenex the System's Fair Market Value. Alternatively, Customer may choose to renew (extend) this Agreement. If the purchase option is not exercised, the System must be returned to BioGenex (shipping costs to be paid by BioGenex). | | |
| Other Conditions: | 1.the above accumulated balance can onlyl be adjusted with the reagent purchases during the contract period. The monthly paid amount will not be refunded in any case. 2. BioGenex is primary vendor during the entire contract period and all reagents and consumables mucst be purchased onoy from BioGenex unless BioGenex is unable to make the required supply. 3. The reagent discount will be calclated as $5.0/slide for IHC. 4. At the end of each year, BioGenex will review the customer purchase volume and bill the Customer if purchase volume is below the Monthly Minimum. | | |

.


Accelerating the pace of precision medicine

*System Rental And Reagent Supply Agreement(Monthly)*

*General Terms*

1. This Agreement is subject to additional terms and conditions set forth in Appendices 1, 2 & 3, hereby bound to this Agreement. Customer agrees to be bound by all terms of this Agreement.
2. Customer warrants that the person signing this Agreement for Customer is authorized to do so, and that Customer has obtained all approvals and resolutions necessary to enter into this Agreement and make the Agreement binding upon Customer.
3. Customer agrees to keep the terms of this Agreement confidential and shall not disclose it to any third party without the prior written consent of BioGenex. Customer's confidentiality obligation shall remain in force for five (5) years from the Start Date stated above.

| BIOGENEX LABORATORIES, INC. ("Seller") | | InterScience Diagnostic Labs ("Customer") | |
|---|---|---|---|
| Signature: | | Signature: | *Smauh* |
| Name: | | Name: | Sarah Malic |
| Title: | | Title: | SPD |
| Date: | | Date: | 2/22/19 |

**Appendix 1: Product Discounts.  Appendix 2: Service and Maintenance Schedule.  Appendix 3: Additional Terms.**



*Accelerating the pace of precision medicine*

**System Rental And Reagent Supply Agreement(Monthly)**

## APPENDIX 1: PRODUCT DISCOUNTS

| UNIVERSAL DISCOUNT | |
|---|---|
| | % DISCOUNT* |
| All Products (except Automated Instrument Systems) listed in the current BioGenex Product Catalog | N/A |

| CATEGORY DISCOUNT | |
|---|---|
| | % DISCOUNT* |
| **NON-BARCODED PRODUCTS** | |
| Primary Antibodies (AM) | N/A |
| IHC Detection Systems & Reagents (DM) | N/A |
| **BARCODED PRODUCTS** | |
| Primary Antibodies (AB) | N/A |
| IHC Detection Systems & Reagents (DB) | N/A |
| Special Stains (SS) | N/A |
| **OTHERS** | |
| ISH Detection Systems & Probes (IS) | N/A |
| Tissue Controls (CT) | N/A |
| Accessories (SG) | N/A |

| LINE ITEM DISCOUNTS | | | | |
|---|---|---|---|---|
| CATALOG # | DESCRIPTION | % DISCOUNT* | LIST PRICE (US $) | YOUR PRICE |
| | See CPS Analysis attached at the end of this document | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*Percent Discount is off the current U.S. List Price.  (List Prices are subject to change with 30 days prior written notice.)

*Other Conditions of Sale*

| Customer is currently using BioGenex's i6000 with serial number AS61055, EZ retriever System with serial number MW014-MO1082, and i500 label Printer serial # BLS 560.1009 |
|---|

*Terms and Conditions*

1. BioGenex guarantees to Customer a firm discount off the current list price for the products listed above for the term of this Agreement.

2. Purchases will be charged to the Reagent Allowance. Customer can place reagent orders against accumulated Reagent Allowance. Reagent orders in excess of the accumulated Reagent Allowance will be invoiced after shipment and reconciled annually.

3. The BioGenex reagent products will be provided on an "On Demand" basis, to be based upon the actual reagent product volumes in use throughout the term of this Agreement.

4. This agreement is non-cancelable except for material breach. Upon termination, all outstanding invoices must be paid in full.

5. Failure to provide operational instruments for 30 consecutive days shall constitute a material breach.

BioGenex Initials: _____      Date: _____

Customer Initials: _____      Date: 02/22/19



**System Rental And Reagent Supply Agreement(Monthly)**

*Accelerating the pace of precision medicine*

## APPENDIX 2: SERVICE AND MAINTENANCE SCHEDULE

Service Plan: The following Service Plan describes the services to be provided by BioGenex Laboratories ("BioGenex") during the term of coverage ("Service Period"). The Plan shall only apply if the System remains at the Site where installed by BioGenex's authorized representative, and according to the following terms.

Service: (1) Preventative Maintenance service; (2) Emergency Repair or replacement service due to material defect in the hardware of the System; (3) Repair service if the software causes the System to become unusable; all other software errors which will be corrected in the next routine software release; (4) Software upgrades. Replacement parts will be provided on an exchange (refurbished) or new part basis, at BioGenex's option. Labor and Travel to install such replacement parts are included. Replaced parts become BioGenex's property.

Service Hours: Monday through Friday, 8:00 AM – 5:00 PM, holidays excluded. Local time is within the United States.

Customer Responsibilities: The Plan shall only apply for as long as the Customer at its own expense (1) maintains the Site and its environment in a condition suitable for operation of the System (including temperature and humidity control, incoming power quality, and fire protection system), as provided in the System Operating Manual; (2) maintains the System under the routine maintenance schedule, as provided in the System Operating Manual; and (3) makes the System available without restriction for service in accordance with a mutually acceptable appointment schedule.

Exclusions: The Plan does not cover (1) the provision, payment or reimbursement of any rigging or facility cost or accessory or supply item; (2) the items covered by a third party warranty; (3) the correction of a malfunction caused by Customer's failure to fulfill its responsibilities hereunder, the failure of anyone other than BioGenex or its service contractor to comply with its written instructions or recommendations, the combination of the System with an incompatible third party product, the alteration or improper storage, handling, use or maintenance of any part of the System by anyone other than BioGenex or its service contractor, any factor external to the System, or anything beyond BioGenex's reasonable control. Any service required due to any of the foregoing causes shall be charged to Customer at BioGenex's standard service rates.

Service Charges: BioGenex may charge to the customer its standard service rates for services, or may decline to provide the services required to correct a malfunction caused by customer's failure to fulfill its responsibilities hereunder, the failure of anyone other than BioGenex or its service contractor to comply with its written instructions or recommendations, the combination of the System(s) with an incompatible third party product, the alteration or improper storage, handling, use or maintenance of any part of the System(s) by anyone other than BioGenex or its service contractor, any factor external to the System(s) or beyond BioGenex reasonable control.

Additional Terms: Services will be provided during regular business hours. The typical phone response time is same or the next business day and onsite response in two days. (Field Service personnel carry with them about 80% of the parts required to repair units. Should a part need to be ordered, the completion of the repair may be delayed until the next business day after analysis of the system failure. Weekend or holiday service is available at an additional cost. BioGenex may subcontract with service contractors any of the service obligations to Customer. No such subcontract will release BioGenex from its obligations to Customer.

In lieu of repair, BioGenex may elect to replace the System(s) or any part thereof, or refund the portion of the Purchase Price paid by Customer. Replacement parts will be provided on an exchange (refurbished) or new part basis, at BioGenex's option. Labor to install replacement parts is included. Replaced parts become BioGenex's property. Components of the System(s) covered by a third party warranty are subject to the limitations contained in that warranty. The Services are due only if the System(s) remains at the Installation Site. Rigging or facility services, accessory, consumable and supply items are charged separately. The Services provided under this Service Plan are performed under the terms and conditions of this System Rental and Reagent Supply Agreement between BioGenex and Customer.

*Installation Site (Current or planned location of system)*

| Building/Dept./Room# | |
| --- | --- |
| Street Address | 4218 Amboy Rd |
| City, State, ZIP Code | SI NY 10308 |

## APPENDIX 3: ADDITIONAL TERMS

A. RENTAL OF SYSTEM. BioGenex Laboratories, Inc. ("Seller") agrees to rent and Customer agrees to pay for the rental of the System specified on the reverse ("Hardware"). The System comprises the Hardware and the software ("Software") licensed under the Software Licenses. The Rental Fee for the Hardware and the services described in this Agreement is the amount specified in the System Rental and Reagent Agreement ("Rental Fee"). BioGenex's obligations under this Agreement are subject to credit approval of the Customer. Any invoice not paid in full within 30 days of its date will be deemed past due and Customer agrees to pay late charges equal to one and one-half percent (1½%) of the unpaid balance per month (or the maximum rate allowed by law, if lower). Neither the invoicing of late payment charges nor the acceptance of them is to be deemed an agreement to either extend or finance payments due or past due.

In addition, Customer agrees to pay all collection costs and reasonable legal fees incurred by BioGenex as a result of Customer's late payment or non-payment. The Rental Fee does not include applicable taxes. In addition to the Rental Fee, Customer is responsible for the payment of all taxes applicable to this sale or BioGenex's performance of this Agreement.

B. USE. Customer agrees to use the System only as specified in the Manual. Customer agrees that the System will be located only at the site specified above, or as agreed in writing by the Parties.

BioGenex Initials: _____   Date: _____

Customer Initials: _____   Date: 2/22/19



**System Rental And Reagent Supply Agreement(Monthly)**

## APPENDIX 3: ADDITIONAL TERMS (Continued)

C. RISK AND TRANSFER OF TITLE. Risk of loss or damage to the System or any of its components shall pass to Customer upon delivery to the site, provided that the System is delivered in an undamaged state and is operational in accordance with the Product specification. At the end of this Agreement, the Customer may own title to the System by paying to BioGenex the fair market value of the System.

D. ACCEPTANCE. The System is deemed accepted by Customer unless Customer delivers to Seller written notice of defect or nonconformance within 10 days of receipt. Customer shall return the System to Seller within 20 days of a return material authorization ("RMA") number obtained from Seller labeled with the applicable RMA number.

E. WARRANTY DISCLAIMER. All Hardware, Software and parts are provided AS IS. SELLER SPECIFICALLY DISCLAIMS ALL EXPRESS, STATUTORY OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT OF THIRD PARTY RIGHTS. Where disclaimer of implied warranties is prohibited by law, such warranties expire 90 days after purchase of the System.

F. LIMITATION ON LIABILITY. Except with respect to its indemnification obligations under this Agreement, each Party's entire liability arising under or related to this Agreement, including liability arising out of the system, services performed (including any services under a service agreement), and/or from such party's negligent or other acts or omissions, and/or from any warranty, and/or from any software license agreements, shall be limited to the price of the system and/or services giving rise to the claim, regardless of the legal or equitable basis of any claim or of actual notice. Neither party shall be liable for (a) any incidental, indirect, special or consequential loss or damages, or (b) any damages relating to a claim made against customer by a third party.

G. GENERAL TERMS.

1. This Agreement constitutes the entire agreement between the parties with respect to the described transaction. It supersedes all prior negotiations, agreements, or understandings of any nature, whether oral or written, and may only be modified or amended in writing.

2. Any assignment of this Agreement will be void without prior written consent of Seller in its sole discretion.

3. Customer agrees to indemnify, hold harmless and defend Seller and its officers, directors and employees against any and all liability, damages, judgments, awards or costs of defense (including without limitation reasonable attorneys' fees, expenses to defend and amounts paid in settlement of any action) directly resulting from any claim or claims of third parties against any of the foregoing to the extent that such claim or claims are based on the negligence or willful misconduct of Customer, its affiliates, or their respective employees or agents, but only to the extent such claim in not based on the negligence or willful misconduct of Seller. Customer shall not settle or dispose of the matter in any manner which could negatively and materially affect the rights or liability of Seller without Seller's prior written consent.

4. Any failure to enforce any provision of this Agreement is not a waiver of that provision or of the right to later enforce each and every provision.

5. To be effective, any notification or consent herein must be sent by prepaid certified mail, return receipt requested, to the addresses specified herein or to such other address as either party may specify by written notice, and (if to Seller) shall be marked to the attention of "Contracts Administration".

6. This Agreement shall be governed by the laws of the State of California as applied to agreements entered into between California residents and executed and performed in the State of California. Any dispute arising out of or related to this Agreement shall be resolved solely in the U.S. District Court for the Northern District of California or in San Francisco County, and in no other courts, and Customer hereby consents to the jurisdiction of, venue in and service of process from the aforementioned courts. The United Nations Convention on the International Sales of Goods is hereby expressly excluded from application to this Agreement.

7. Customer hereby grants to Seller a purchase money security interest in the System sold hereunder, and all proceeds thereof, including but not limited to insurance proceeds, to secure Customer's payment of the Total Purchase Price. Customer's failure to pay any amount due shall give Seller the right to repossess and remove the System from Customer's custody. Customer agrees, without further consideration, at any time to do or cause to be done, executed and delivered, all such further acts and instruments as Seller may reasonably request in order to perfect and maintain the first priority of Seller's security interest.

Customer hereby irrevocably constitutes and appoints Seller, and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Customer and in the name of Customer or in its own name, from time to time at Seller's discretion, to take any and all appropriate action and to execute and deliver any and all documents and instruments which may be necessary or desirable to perfect and maintain the first priority of Seller's security interest. The power of attorney granted pursuant to this section shall be irrevocable until all of Customer's obligations under this Agreement are paid and performed in full. Notwithstanding anything herein to the contrary, this section and the security interest granted herein shall survive termination of this Agreement and shall remain effective until all obligations of Customer secured hereunder have been satisfied in full.

8. The parties are independent contractors. Nothing in this Agreement will be construed to designate Seller, its employees, or its service contractors and their employees as Customer's employees, agents, joint ventures or partners.

9. Neither party shall be liable for delays, loss, damages or other consequences of acts, omissions or events beyond a party's control and which may not be overcome by due diligence, including strikes, labor strife or civil unrest.

10. All of Seller's rights, privileges and remedies with respect to this Agreement will continue in full force and effect after the end of this Agreement.

11. If any part of this Agreement is declared invalid by any legally governing authority having jurisdiction over either party, then such declaration shall not affect the remainder of the Agreement and the parties shall revise the invalidated part in a manner that will render such provision valid without impairing the parties' original interest.

BioGenex Initials: _____      Date: _____

Customer Initials: _SM_      Date: _2/22/19._

# EXHIBIT B

**BioGenex**
**48810 Kato Road**
**Suite 100E & 200E**
**Fremont  CA  94538**
**+1 (800) 421 4149  Fax: +1 (510) 824 1490**

**INVOICE**

| 1008696-US | 3/11/2020 |
|---|---|

*Remit To:*          ,

**Bill To:**

INTERSCIENCE DIAGNOSTIC LABS
4218 AMBOY RD
STATEN ISLAND NY  10308 UNITED STATES OF
AMERICA

**Ship To:**

MS. SARAH MALIK
4218 AMBOY ROAD
STATEN ISLAND NY  10308 UNITED STATES OF
AMERICA

| **Terms:** | NET 30 | **Due Date:** | 4/10/2020 |
|---|---|---|---|

| Quantity | Item Number | Rev | Description | Price | Extension |
|---|---|---|---|---|---|
| Pack Slip # | Ship Date | PO Number | Order Date | Ship Via | FOB |
| 2.00 | AM880-10M | A | H.PYLORI | 296.139500  EACH | 592.28 |
| 1008176-US | 3/11/2020 | 02242020. | 2/24/2020 | FedEx Standard Overnight® | |

All Prices Are Shown in US Dollar

| | |
|---|---|
| Subtotal: | 592.28 |
| Tax: | 56.56 |
| Freight: | 45.00 |
| Total: | 693.84 |

*Thank You*

**BioGenex**
**48810 Kato Road**
**Suite 100E & 200E**
**Fremont  CA  94538**
**+1 (800) 421 4149  Fax: +1 (510) 824 1490**

# INVOICE

| 1008830-US | 4/1/2020 |
|---|---|

*Remit To:*              ,

**Bill To:**

**Ship To:**

INTERSCIENCE DIAGNOSTIC LABS
1750 RICHMOND AVE
0
STATEN ISLAND NY  10314 USA

| **Terms:** NET 30 | **Due Date:**  5/1/2020 |
|---|---|

| Quantity | Item Number | Rev | Description | Price | Extension |
|---|---|---|---|---|---|
| Pack Slip # | Ship Date | PO Number | Order Date | Ship Via | FOB |
| 1.00 | | | | **4,873.625000** | 4,873.63 |
| | SALES SHORT FALL AS PER AGREEMENT | | | | |

All Prices Are Shown in US Dollar

Short fall sale in Mar 2020. As per Agreemnt  $6000 per Mont
Sales in March $693.84
Short fall as per Agreemnt $5306.16

*Thank You*

| | |
|---|---|
| **Subtotal:** | **4,873.63** |
| **Tax:** | **432.54** |
| **Freight:** | **0.00** |
| **Total:** | **5,306.17** |

**BioGenex**
**48810 Kato Road**
**Suite 100E & 200E**
**Fremont  CA  94538**
**+1 (800) 421 4149  Fax: +1 (510) 824 1490**

**INVOICE**

| 1008480-US | 2/11/2020 |
|---|---|

*Remit To:*          ,

| Bill To: |
|---|

INTERSCIENCE DIAGNOSTIC LABS
4218 AMBOY RD
STATEN ISLAND NY  10308 UNITED STATES OF
AMERICA

| Ship To: |
|---|

MS. SARAH MALIK
4218 AMBOY ROAD
STATEN ISLAND NY  10308 UNITED STATES OF
AMERICA

| **Terms:** NET 30 | **Due Date:** 3/12/2020 |
|---|---|

| Quantity | Item Number | | Rev | Description | | Price | | Extension |
|---|---|---|---|---|---|---|---|---|
| Pack Slip # | Ship Date | PO Number | | Order Date | Ship Via | FOB | | |
| 3.00 | **AN846-10M** | | **A** | **ANTI-CD3** | | **247.138000** | EACH | 741.41 |
| 1007969-US | 2/11/2020 | 02102020 | | 2/10/2020 | FedEx Standard Overnight® | | | |
| 1.00 | **AM880-10M** | | **A** | **H.PYLORI** | | **296.139500** | EACH | 296.14 |
| 1007969-US | 2/11/2020 | 02102020 | | 2/10/2020 | FedEx Standard Overnight® | | | |
| 20.00 | **HK522-XAK** | | **A** | **EZ-AR2?** | | **105.493088** | EACH | 2,109.86 |
| 1007969-US | 2/11/2020 | 02102020 | | 2/10/2020 | FedEx Standard Overnight® | | | |
| 1.00 | | | | | | **15.000000** | | 15.00 |
| | HANDLING | | | | | | | |

All Prices Are Shown in US Dollar

| | |
|---|---|
| **Subtotal:** | **3,162.41** |
| **Tax:** | **303.75** |
| **Freight:** | **260.00** |
| **Total:** | **3,726.16** |

*Thank You*

**BioGenex**
**48810 Kato Road**
**Suite 100E & 200E**
**Fremont  CA  94538**
**+1 (800) 421 4149  Fax: +1 (510) 824 1490**

## INVOICE

| 1008562-US | 2/24/2020 |
|---|---|

*Remit To:*              ,

| Bill To: |
|---|

INTERSCIENCE DIAGNOSTIC LABS
4218 AMBOY RD
STATEN ISLAND NY  10308 UNITED STATES OF
AMERICA

| Ship To: |
|---|

MS. SARAH MALIK
4218 AMBOY ROAD
STATEN ISLAND NY  10308 UNITED STATES OF
AMERICA

| **Terms:** NET 30 | **Due Date:** 3/25/2020 |
|---|---|

| Quantity | Item Number | Rev | Description | Price | | Extension |
|---|---|---|---|---|---|---|
| Pack Slip # | Ship Date | PO Number | Order Date | Ship Via | FOB | |
| 5.00 | **AN846-10M** | **A** | **ANTI-CD3** | **247.138000** | EACH | 1,235.69 |
| 1008044-US | 2/24/2020 | 02242020. | 2/24/2020 | FedEx Standard Overnight® | | |
| 1.00 | **AM880-10M** | **A** | **H.PYLORI** | **296.139500** | EACH | 296.14 |
| 1008044-US | 2/24/2020 | 02242020. | 2/24/2020 | FedEx Standard Overnight® | | |
| 3.00 | **QD430-XAKE** | **G** | **NON-BIOTIN RTU HRP/ DAB** | **837.286500** | EACH | 2,511.86 |
| 1008044-US | 2/24/2020 | 02242020. | 2/24/2020 | FedEx Standard Overnight® | | |
| 20.00 | **HK583-5K** | **B** | **SUPER SENSITIVE WASH BUFFER** | **50.451944** | EACH | 1,009.04 |
| 1008044-US | 2/24/2020 | 02242020. | 2/24/2020 | FedEx Standard Overnight® | | |
| 1.00 | | | | **25.000000** | | 25.00 |
| | HANDLING | | | | | |

All Prices Are Shown in US Dollar

*Thank You*

| | |
|---|---|
| Subtotal: | 5,077.73 |
| Tax: | 460.86 |
| Freight: | 115.00 |
| Total: | 5,653.59 |

# EXHIBIT C

**BioGenex**
**48810 Kato Road**
**Suite 100E & 200E**
**Fremont  CA  94538**
**+1 (800) 421 4149  Fax: +1 (510) 824 1490**

**INVOICE**

| 1009811-US | 8/31/2020 |
|---|---|

*Remit To:*            ,

**Bill To:**

INTERSCIENCE DIAGNOSTIC LABS
1750 RICHMOND AVE
0
STATEN ISLAND NY  10314 USA

**Ship To:**

| **Terms:** NET 30 | **Due Date:**  9/30/2020 |
|---|---|

| Quantity | Item Number | Rev | Description | Price | Extension |
|---|---|---|---|---|---|
| Pack Slip # | Ship Date | PO Number | Order Date | Ship Via | FOB |
| 47.00 | | | | 6,000.000000 | 282,000.00 |
| | MONTHLY SHORTFALL | | | | |

All Prices Are Shown in US Dollar

MONTHLY SHORT FALL PURCHASE APR'20 TO FEB'24 @6000pm

*Thank You*

| Subtotal: | 282,000.00 |
|---|---|
| Tax: | 0.00 |
| Freight: | 0.00 |
| Total: | 282,000.00 |

# EXHIBIT D

**BioGenex**
**48810 Kato Road**
**Suite 100E & 200E**
**Fremont  CA  94538**
**+1 (800) 421 4149  Fax: +1 (510) 824 1490**

# INVOICE

| 1009834-US | 8/31/2020 |
|---|---|

*Remit To:*               ,

| Bill To: |
|---|

| Ship To: |
|---|

INTERSCIENCE DIAGNOSTIC LABS
1750 RICHMOND AVE
0
STATEN ISLAND NY  10314 USA

| **Terms:** NET 30 | **Due Date:**   9/30/2020 |
|---|---|

| Quantity | Item Number | Rev | Description | Price | Extension |
|---|---|---|---|---|---|
| Pack Slip # | Ship Date | PO Number | Order Date | Ship Via | FOB |
| 1.00 | | | | 5,599.200000 | 5,599.20 |
| | MW014-MO EZ Retriever™ System, 110v | | | | |
| 1.00 | | | | 56,000.000000 | 56,000.00 |
| | AS6030 i6000™ Diagnostic | | | | |

All Prices Are Shown in US Dollar

| | |
|---|---|
| Subtotal: | 61,599.20 |
| Tax: | 0.00 |
| Freight: | 0.00 |
| Total: | 61,599.20 |

*Thank You*

# EXHIBIT E

49026 Milmont Drive ● Fremont ● CA 94538 ● Tel: (510) 824-1400 ● Fax: (510) 824-1490

## SYSTEM RENTAL AND REAGENT SUPPLY AGREEMENT

(For Office Use ONLY)

| CUID #: | ITS002 | Date: | 13-Sep-13 |
|---|---|---|---|
| Prepared By: | Deepak Vikraman | Contract ID: | IDL-9-13-13-001 |
| AS: | Deepak Vikraman | PO#: | |

| Customer Information (Ship To Address) | | Billing Information (Bill To Address) | |
|---|---|---|---|
| Institution Name: | InterScience Diagnostics Lab | Legal Name: | InterScience Diagnostics Lab |
| Attention: | Sadia Malik | Attention: | Sadia Malik |
| Address: | | Address: | |
| Address: | 1750 Richmond Ave | Address: | 1750 Richmond Ave |
| City: | Staten Island | City: | Staten Island |
| Zip Code: | 10314 | Zip Code: | 10314 |
| State: | NY | State: | NY |
| Tel. No. | 718.698.5461 | Tel. No. | 718.698.5461 |
| FAX. No. | 718.698.4517 | FAX No.: | 718.698.4517 |
| E-Mail: | amustang@aol.com | E-Mail: | amustang@aol.com |

## Product Description and Pricing

| CATALOG NO. | DESCRIPTION | QUANTITY | SERIAL NUMBERS* |
|---|---|---|---|
| AS6030 | i6000 Diagnostics | 1 | AS61055 |
| MW014-MO | EZ Retriever System | 1 | MW014-MO1082 |

BLS500  i500 Label Printer  Qty 1 serial # BLS 560-1009

| | |
|---|---|
| Rental Fees* (per month): | $0.00 |
| Service Contract Fees (per month): | $0.00 |
| Reagent Commitment (Per Month): | $2,750.00 |
| TOTAL PAYMENTS (per month): | $2,750.00 |

## Summary of Basic Terms

| Monthly Minimum: | $2,750 | Deposit: | None |
|---|---|---|---|
| Term: | 60 Months | Contract Start Date: | 10/1/2013 |
| Cancellation: | This Agreement is non-cancelable. | Contract End Date: | 9/30/2018 |
| Reagent Commitment: | Reagent Commitment* will be paid each month and Customer can place reagent orders against accumulated balance. If purchases exceed the accumlated balance customer will pay any remaining balance under their normal credit terms. | | |
| Reagent Discounts: | Discounts for Reagents are listed in Appendix 1. | | |
| Delivery Terms: | Shipped FOB Seller's dock; Insurance & Freight prepaid and will be added to the Invoice. | | |
| Installation and Training: | Installation and Training to be provided by BioGenex at Customer's site at no cost to the Customer. | | |
| Service and Maintenance: | Full Service & Maintenance covers Repairs and Preventive Maintenance of system and computer hardware, as well as software upgrades.  Service Plan covers parts, labor, and service travel. (Refer to Appendix 2). | | |
| Service Fee: | Service Contract Fees are mandatory for rentals and are included in the Total Payments made per month. | | |
| Purchase or Renewal Option: | At the End Date of this Agreement, Customer may purchase title to the System by paying to BioGenex the System's Fair Market Value.  Alternatively, Customer may choose to renew (extend) this Agreement.  If the purchase option is not exer-cised, the System must be returned to BioGenex (shipping costs to be paid by BioGenex). | | |
| Other condition of sale | 1. The above accumulated balance can only be adjusted with the reagent purchases during the contract period. The monthly paid amount will not be refunded in any case<br>2. BioGenex is the primary vendor during the entire contract period and all reagents and consumables must be purchased only from BioGenex unless BioGenex is unable to make the required supply<br>3. The  reagant discount will be calculated as $7 cost per slide for IHC<br>4. At the end of each contract year , BioGenex will  review the customer  purchase  and if eligible  be given the option of instrument upgrade  with new contract terms. | | |

**General Terms**

1. This Agreement is subject to additional terms and conditions set forth in Appendices 1, 2 & 3, hereby bound to this Agreement.  Customer agrees to be bound by all terms of this Agreement.

2. Customer warrants that the person signing this Agreement for Customer is authorized to do so, and that Customer has obtained all approvals and resolutions necessary to enter into this Agreement and make the Agreement binding upon Customer.

3. Customer agrees to keep the terms of this Agreement confidential and shall not disclose it to any third party without the prior written consent of BioGenex. Customer's confidentiality obligation shall remain in force for five (5) years from the Start Date stated above.

| BIOGENEX LABORATORIES, INC. ("Seller") | | InterScience Diagnostics Lab ("Customer") | |
|---|---|---|---|
| Signature: | _Dale_ | Signature: | _Sadia Malik_ |
| Name: | Deepak Vikraman | Name: | Manger  SADIA MALIK |
| Title: | Regional Account Manager | Title: | |
| Date: | 09-13-20313 | Date: | 9/13/2013 |

### APPENDIX 1:   PRODUCT DISCOUNT SCHEDULE

| Customer Information | | (For Office Use ONLY) | | |
|---|---|---|---|---|
| Institution Name: | InterScience Diagnostics Lab | CUID #: | TBD   ITS002 | |
| Attention: | Sadia Malik | Start Date: | 10/1/2013 | |
| Address: | | End date: | 9/30/2018 | |
| Address: | 1750 Richmond Ave | Price Book: | Current | |
| City: | Staten Island | Yearly Commitment: | 33,000 | |
| Zip Code: | 10314 | | | |
| State: | NY | | | |
| Tel. No. | 718.698.5461 | | Approval | |
| FAX. No. | 718.698.4517 | | KK | |
| E-Mail: | amustang@aol.com | | | |

| X | GENERAL DISCOUNT | |
|---|---|---|
| DESCRIPTION | | PERCENT DISCOUNT* |
| Catalog. | | $7 Cost per slide for IHC |

| N/A | CATEGORY DISCOUNT | |
|---|---|---|
| NON-BARCODED PRODUCTS | | PERCENT DISCOUNT* |
| Primary Antibodies (AM) | | |
| IHC Detection Systems & Reagents (DM) | | |
| BARCODED PRODUCTS | | |
| Primary Antibodies (AB) | | Calculated as above |
| IHC Detection Systems & Reagents (DB) | | Calculated as above |
| Special Stains (SS) | | |
| OTHERS | | |
| ISH Detection Systems & Probes (IS) | | |
| Tissue Controls (CT) | | |
| Accessories (SG) | | |

*Percent Discount is off the current U.S. List Price.  (List Prices are subject to change with 30 days prior written notice.)

| | LINE ITEM DISCOUNT | | |
|---|---|---|---|
| CATALOG # | DESCRIPTION | LIST PRICE (US $) | CONTRACT PRICE (US $) |
| | | | |
| | | | |
| | | | |
| | | | |

## Terms and Conditions

1. BioGenex guarantees to Customer a firm discount off the current list price for the products listed above for the term of this Agreement.

2. Purchases will be charged to the Reagent Allowance. Customer can place reagent orders against accumulated Reagent Allowance. Reagent orders in excess of the accumulated Reagent Allowance will be invoiced after shipment and reconciled annually.

3. The BioGenex reagent products will be provided on an "On Demand" basis, to be based upon the actual reagent product volumes in use throughout the term of this Agreement.

4. This agreement is non-cancelable except for material breach. Upon termination, all outstanding invoices must be paid in full.

5. Failure to provide operational instruments for 30 days shall constitute a material breach.

BioGenex initials: DV   Date: 9|13|2013

Customer Initials: _____   Date: 9|13|2013

## APPENDIX 2:   SERVICE AND MAINTENANCE SCHEDULE

### Service Plan:

**Service:** (1) Preventative Maintenance service; (2) Emergency Repair or replacement service due to material defect in the hardware of the System; (3) Repair service if the software causes the System to become unusable; all other software errors which will be corrected in the next routine software release; (4) Software upgrades. Replacement parts will be provided on an exchange (refurbished) or new part basis, at BioGenex's option. Labor and Travel to install such replacement parts are included. Replaced parts become BioGenex's property.

**Service Hours:** Monday through Friday, 8:00 AM – 5:00 PM, holidays excluded. Local time is within the United States.

**Customer Responsibilities:** The Plan shall only apply for as long as the Customer at its own expense (1) maintains the Site and its environment in a condition suitable for operation of the System (including temperature and humidity control, incoming power quality, and fire protection system), as provided in the System Operating Manual; (2) maintains the System under the routine maintenance schedule, as provided in the System Operating Manual; and (3) makes the System available without restriction for service in accordance with a mutually acceptable appointment schedule.

**Exclusions:** The Plan does not cover (1) the provision, payment or reimbursement of any rigging or facility cost or accessory or supply item; (2) the items covered by a third party warranty; (3) the correction of a malfunction caused by Customer's failure to fulfill its responsibilities hereunder, the failure of anyone other than BioGenex or its service contractor to comply with its written instructions or recommendations, the combination of the System with an incompatible third party product, the alteration or improper storage, handling, use or maintenance of any part of the System by anyone other than BioGenex or its service contractor, any factor external to the System, or anything beyond BioGenex's reasonable control. Any service required due to any of the foregoing causes shall be charged to Customer at BioGenex's standard service rates.

**Service Charges:** BioGenex may charge to the customer its standard service rates for services, or may decline to provide the services required to correct a malfunction caused by customer's failure to fulfill its responsibilities hereunder, the failure of anyone other than BioGenex or its service contractor to comply with its written instructions or recommendations, the combination of the System(s) with an incompatible third party product, the alteration or improper storage, handling, use or maintenance of any part of the System(s) by anyone other than BioGenex or its service contractor, any factor external to the System(s) or beyond BioGenex reasonable control.

**Additional Terms:** Services will be provided during regular business hours. The typical phone response time is same or the next business day and onsite response in two days. (Field Service personnel carry with them about 80% of the parts required to repair units. Should a part need to be ordered, the completion of the repair may be delayed until the next business day after analysis of the system failure. Weekend or holiday service is available at an additional cost. BioGenex may subcontract with service contractors any of the service obligations to Customer. No such subcontract will release BioGenex from its obligations to Customer.

In lieu of repair, BioGenex may elect to replace the System(s) or any part thereof, or refund the portion of the Purchase Price paid by Customer. Replacement parts will be provided on an exchange (refurbished) or new part basis, at BioGenex's option. Labor to install replacement parts is included. Replaced parts become BioGenex's property. Components of the System(s) covered by a third party warranty are subject to the limitations contained in that warranty. The Services are due only if the System(s) remains at the Installation Site. Rigging or facility services, accessory, consumable and supply items are charged separately. The Services provided under this Service Plan are performed under the terms and conditions of this System Rental and Reagent Supply Agreement between BioGenex and Customer.

**Installation Site (Current or planned location of system)**

| Building/Dept./Room# | |
|---|---|
| Street Address | 1750 Richmond Ave |
| City, State, ZIP Code | Staten Island , NY 10314 |

## APPENDIX 3:   ADDITIONAL TERMS

**A. RENTAL OF SYSTEM. BioGenex Laboratories, Inc. ("Seller") agrees to rent and Customer agrees to pay for the rental of the System specified on the reverse ("Hardware"). The System comprises the Hardware and the software ("Software") licensed under the Software Licenses.  The Rental Fee for the Hardware and the services described in this Agreement is the amount specified in the System Rental and Reagent Agreement ("Rental Fee").  BioGenex's obligations under this Agreement are subject to credit approval of the Customer. Any invoice not paid in full within 30 days of its date will be deemed past due and Customer agrees to pay late charges equal to one and one-half percent (1½%) of the unpaid balance per month (or the maximum rate allowed by law, if lower). Neither the invoicing of late payment charges nor the acceptance of them is to be deemed an agreement to either extend or finance payments due or past due.**

In addition, Customer agrees to pay all collection costs and reasonable legal fees incurred by BioGenex as a result of Customer's late payment or non-payment. The Rental Fee does not include applicable taxes. In addition to the Rental Fee, Customer is responsible for the payment of all taxes applicable to this sale or BioGenex's performance of this Agreement.

**B. USE. Customer agrees to use the System only as specified in the Manual. Customer agrees that the System will be located only at the site specified above, or as agreed in writing by the Parties.**

**C. RISK AND TRANSFER OF TITLE. Risk of loss or damage to the System or any of its components shall pass to Customer upon delivery to the site, provided that the System is delivered in an undamaged state and is operational in accordance with the Product specification. At the end of this Agreement, the Customer may own title to the System by paying to BioGenex the fair market value of the System.**

**D. ACCEPTANCE. The System is deemed accepted by Customer unless Customer delivers to Seller written notice of defect or nonconformance within 10 days of receipt. Customer shall return the System to Seller within 20 days of a return material authorization ("RMA") number obtained from Seller labeled with the applicable RMA number.**

**E. WARRANTY DISCLAIMER. All Hardware, Software and parts are provided AS IS. SELLER SPECIFICALLY DISCLAIMS ALL EXPRESS, STATUTORY OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT OF THIRD PARTY RIGHTS. Where disclaimer of implied warranties is prohibited by law, such warranties expire 90 days after purchase of the System.**

**F. LIMITATION ON LIABILITY. Except with respect to its indemnification obligations under this Agreement, each Party's entire liability arising under or related to this Agreement, including liability arising out of the system, services performed (including any services under a service agreement), and/or from such party's negligent or other acts or omissions, and/or from any warranty, and/or from any software license agreements, shall be limited to the price of the system and/or services giving rise to the claim, regardless of the legal or equitable basis of that claim or of actual notice. Neither party shall be liable for (a) any incidental, indirect, special or consequential loss or damages, or (b) any damages relating to a claim made against customer by a third party.**

**G. GENERAL TERMS.**

1. This Agreement constitutes the entire agreement between the parties with respect to the described transaction. It supersedes all prior negotiations, agreements, or understandings of any nature, whether oral or written, and may only be modified or amended in writing.

2. Any assignment of this Agreement will be void without prior written consent of Seller in its sole discretion. The purchased System(s) cannot be resold or assigned to a third party without prior written consent of Seller in its sole discretion. Resale or assignment of the System(s) will entail payment to the Seller of software licensing fees.

judgments, awards or costs of defense (including without limitation reasonable attorneys' fees, expenses to defend and amounts paid in settlement of any action) directly resulting from any claim or claims of third parties against any of the foregoing to the extent that such claim or claims are based on the negligence or willful misconduct of Customer, its affiliates, or their respective employees or agents, but only to the extent such claim is not based on the negligence or willful misconduct of Seller. Customer shall not settle or dispose of the matter in any manner which could negatively and materially affect the rights or liability of Seller without Seller's prior written consent.

BioGenex initials: _____   Date: 9/13/2013

Customer initials: _____   Date: 9/13/2013

## APPENDIX 3:   ADDITIONAL TERMS (Continued)

4. Any failure to enforce any provision of this Agreement is not a waiver of that provision or of the right to later enforce each and every provision.

5. To be effective, any notification or consent herein must be sent by prepaid certified mail, return receipt requested, to the addresses specified herein or to such other address as either party may specify by written notice, and (if to Seller) shall be marked to the attention of "Contracts Administration".

6. This Agreement shall be governed by the laws of the State of Califor-nia as applied to agreements entered into between California residents and executed and performed in the State of California. Any dispute arising out of or related to this Agreement shall be resolved solely in the U.S. District Court for the Northern District of California or in the state courts in Contra Costa County, California, and in no other courts, and Customer hereby consents to the jurisdiction of, venue in and service of process from the aforementioned courts. The United Nations Convention on the International Sales of Goods is hereby expressly excluded from application to this Agreement.

7. Customer hereby grants to Seller a purchase money security interest in the System sold hereunder, and all proceeds thereof, including but not limited to insurance proceeds, to secure Customer's payment of the Total Purchase Price. Customer's failure to pay any amount due shall give Seller the right to repossess and remove the System from Customer's custody. Customer agrees, without further consideration, at any time to do or cause to be done, executed and delivered, all such further acts and instruments as Seller may reasonably request in order to per-fect and maintain the first priority of Seller's security interest.

8. Customer hereby irrevocably constitutes and appoints Seller, and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Customer and in the name of Customer or in its own name, from time to time at Seller's discretion, to take any and all appropriate action and to execute and deliver any and all documents and instruments which may be necessary or desirable to perfect and maintain the first priority of Seller's security interest. The power of attorney granted pursuant to this section shall be irrevocable until all of Customer's obligations under this Agreement are paid and performed in full. Notwithstanding anything herein to the contrary, this section and the security interest granted herein shall survive termination of this Agreement and shall remain effective until all obligations of Customer secured hereunder have been satisfied in full.

9. The parties are independent contractors. Nothing in this Agreement will be construed to designate Seller, its employees, or its service contractors and their employees as Customer's employees, agents, joint ventures or partners.

10. Neither party shall be liable for delays, loss, damages or other consequences of acts, omissions or events beyond a party's control and which may not be overcome by due diligence, including strikes, labor strife or civil unrest.

11. All of Seller's rights, privileges and remedies with respect to this Agreement will continue in full force and effect after the end of this Agreement.

12. If any part of this Agreement is declared invalid by any legally governing authority having jurisdiction over either party, then such declaration shall not affect the remainder of the Agreement and the parties shall revise the invalidated part in a manner that will render such provision valid without impairing the parties' original interest.

BioGenex initials: DV       Date: 9/13/2013
Customer Initials:          Date: 9/13/2013

| EA0021 AND ITS002 - COST PER SLIDE - CUSTOMER PRICE |
|---|---|---|

| Catalog number | Description | Customer Price |
|---|---|---|
| | | |
| HK086-9K | ANTIGEN RETRIEVAL CITRA 500ML (10X) | $ 232.96 |
| | | |
| QD430-XAK | MEGA NONBIOTIN DETECTION KIT | $ 1,127.67 |
| XT026-V24 | Reagent Vial 20ML | $ 50.75 |
| HK111-50K | PEROXIDE BLOCK, 50 ML | $ 184.18 |
| HK085-5K | POWER BLOCK | $ 122.30 |
| HK100-9K | HEMATOXYLIN 250ML | $ 85.90 |
| XT104-05X | I6000 PIPETTE TIPS, 5BXS (960TIPS) | $ 129.58 |
| HK583-5K | SUPER SENSITIVE WASH BUFFER (20X) | $ 52.42 |
| | | |
| AM418-10M | Anti - p63 ( 10 ml) | $ 356.93 |
| AM322-10M | Anti-CD3 ( 10 ml) | $ 640.64 |
| AM410-10M | Anti Ki67 ( 10 ml) | $ 634.82 |
| AM236-10M | Anti -CD34 ( 10 ml) | $ 609.02 |
| AM195-10M | Anti - p53 ( 10 ml) | $ 580.74 |
| AM423-10M | Anti - CD117 ( 10 ml) | $ 560.77 |
| AN528-10M | Anti Cytokeratin 7 ( 10 ml) | $ 522.50 |
| AM451-10M | Anti-CD10 ( 10 ml) | $ 495.04 |
| AM337-10M | Factor X111A ( 10 ml) | $ 480.06 |
| AM361-10M | Anti Melan - A ( 10 ml) | $ 474.24 |
| AN588-10M | Anti - cytokeratin 5& 6 ( 10 ml) | $ 457.60 |
| AN449-10M | Anti - p504 S ( 10 ml) | $ 282.88 |
| AM058-10M | Anti S100 ( 10 ml) | $ 413.50 |
| AM001-10M | Melanoma ( clone HMB 45 ) ( 10 ml ) | $ 413.50 |
| AM238-10M | Anti -CD20 ( 10 ml) | $ 405.18 |
| AR442-10R | Anti Helicobacter Pylori ( 10 ml) | $ 238.68 |
| AM074-10M | Anti - Vimentin ( 10 ml) | $ 362.75 |
| AM072-10M | Anti-Desmin ( 10 ml) | $ 355.26 |
| AN557-10M | Anti cytokeratin 20 ( 10 ml) | $ 346.94 |
| AM071-10M | Anti Cytokeratin cocktail AE1/AE3 (10 ml) | $ 345.28 |
| AM291-10M | Anti - Cytokeratin 34B E12 ( 10 ml) | $ 201.76 |
| AM540-10M | Anti - p16 ( 10 ml) | $ 176.80 |
| AM318-5M | Anti C-Myc (6 ml) | $ 250.00 |

# EXHIBIT F

**BioGenex**
**48810 Kato Road**
**Suite 100E & 200E**
**Fremont  CA  94538**
**+1 (800) 421 4149  Fax: +1 (510) 824 1490**

**INVOICE**

| 1009887-US | 9/30/2018 |
|---|---|

*Remit To:*           ,

| Bill To: |
|---|

| Ship To: |
|---|

INTERSCIENCE DIAGNOSTIC LABS
1750 RICHMOND AVE
0
STATEN ISLAND NY  10314 USA

| **Terms:** NET 30 | **Due Date:** 10/30/2018 |
|---|---|

| Quantity | Item Number | Rev | Description | Price | Extension |
|---|---|---|---|---|---|
| Pack Slip # | Ship Date    PO Number | | Order Date    Ship Via | FOB | |
| 1.00 | AS6030 I6000 DIAGNOSTICS | | | **22,000.000000** | 22,000.00 |

PURCHASE OPTION-At the End Date of this Agreement, Customer may purchase title to the System by paying to BioGenex the System's Fair Market Value.

All Prices Are Shown in US Dollar

| I6000 - SERIAL NUMBER AS61055 | | |
|---|---|---|
| CONTRACT ID-IDL-9-13-13-001 DT13-SEPT-2013 | | |
| | **Subtotal:** | **22,000.00** |
| | **Tax:** | **0.00** |
| | **Freight:** | **0.00** |
| *Thank You* | **Total:** | **22,000.00** |